IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| QUALITY KING DISTRIBUTORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-2145 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CELTIC INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This suit stems from the alleged partial non-delivery of two shipments of goods. Plaintiff Quality King Distributors, Inc.[1] ("Quality King"), a shipper, filed a two-count complaint for breach of contract in state court against Celtic International, LLC ("Celtic"). Compl. 1, ECF No. 14-1. The complaint's allegations are straightforward. On March 16 and April 21, 2016, Quality King contracted with Celtic to pick up two separate shipments of goods as set forth in the bills of lading for the shipments and deliver the shipments to Quality King's warehouse in the Chicago area. *See* Compl. ¶¶ 4, 17. "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'" *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 93 (2010) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004)). Celtic contracted with its shipping agent, non-defendant GSN Trucking, Inc. ("GSN"), to deliver the shipments. Compl. ¶¶ 5, 19. The bills of lading attached to the complaint list GSN as the shipper. *See* Compl. Ex. A at 1. GSN picked up the shipments, but not all of the goods were delivered to

---

[1] The parties spell plaintiff's name slightly differently. *Compare* Compl. 1, *with* Notice of Removal 1 (spelling of "distributors"). This order uses plaintiff's spelling.

1

Quality King's warehouse, causing Quality King to be short $33,128.34 (first shipment) and $29,522.16 (second shipment). *See* Compl. ¶¶ 5–14, 19–26.

Celtic removed this case to this court on the theory that the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706, preempts Quality King's breach of contract claims. Notice of Removal ¶ 4–7, ECF No. 1; *see also Kawasaki*, 561 U.S. at 107–09 (describing the history of the Carmack Amendment). The court has before it Celtic's motion to dismiss the complaint for failure to state a claim against it. *See* Fed. R. Civ. P. 12(b)(6). The parties dispute whether the Carmack Amendment preempts Quality King's claims and, if so, whether the complaint states a claim under the Carmack Amendment.

The parties' preemption arguments raise a question of this court's subject matter jurisdiction. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Celtic removed this case on the theory that it arises under federal law for purposes of 28 U.S.C. § 1331. Notice of Removal ¶¶ 4, ECF No. 1. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for "[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well pleaded complaint raise[s] issues of federal law." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).

In its complaint filed in state court, Quality King pleaded two breach of contract claims under Illinois law. Compl. 1–3. Neither claim explicitly pleads an issue arising under federal law, so neither satisfies the well-pleaded complaint rule. Celtic does not argue otherwise. *See* Notice of Removal ¶¶ 4–9; *see also Rice*, 65 F.3d at 639 (explaining that "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court" (quoting

2

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). However, Quality King invokes the doctrine of field preemption. Notice of Removal ¶¶ 4–9. Under the doctrine of complete or field preemption, a case arising under state law may nevertheless be removed "where there is a congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court *by transforming the state cause of action into a federal cause of action.*" *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002) (citation and internal quotation omitted); *see also Rice*, 65 F.3d at 639–640; *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 104 n.2. (1992); *Brunner v. Beltmann Grp. Inc.*, 2020 WL 635905, at *3 (N.D. Ill. Feb. 11, 2020) (citing *Di Joseph v. Standard Ins. Co.*, 776 Fed. Appx. 343, 347 (7th Cir. 2019)) (collecting authority holding that Carmack Amendment claims may be removed under the field preemption doctrine).

"The preemptive sweep of the Carmack Amendment extends to state causes of action against carriers 'where goods are damaged or lost in interstate commerce.'" *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697–98 (7th Cir. 2008) (quoting *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414 (7th Cir. 1987)). Thus, whether this case arises under federal law depends on whether the Carmack Amendment preempts Quality King's breach of contract claims. See *Rogers*, 308 F.3d at 788; *Brunner*, 2020 WL 635905, at *2–5 (analyzing Carmack Amendment preemption on motion to remand); *Korer v. Danita Corp.*, 584 F. Supp. 2d 1103, 1105 (N.D. Ill. 2008) (determining whether removal was proper by asking whether the Carmack Amendment preempted the plaintiff's state law claims); *Ducham v. Reebie Allied Moving & Storage, Inc.*, 372 F. Supp. 2d 1076, 1077 (N.D. Ill. 2005) (remanding for lack of subject matter jurisdiction because the Carmack Amendment did not preempt the plaintiff's state

law claims); *V.R. Compounding Corp. v. Occidental Chem. Corp.*, 2000 WL 1368045, at *2–5 (N.D. Ill. Sept. 15, 2000) (analyzing Carmack Amendment preemption on motion to remand).

Ordinarily, the complaint's well-pleaded facts must be accepted as true when deciding a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). But because the preemption issue is jurisdictional here and Celtic attacks the complaint's factual allegations that it was a shipper of goods, "[t]he law is clear that when considering a motion that launches a factual attack against jurisdiction, '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)) (other citation omitted); *see also id.* (explaining the differences between Rule 12(b)(6) motions and motions factually attacking jurisdiction).

The fact that Celtic was a freight broker for the shipments at issue is undisputed before this court. Quality King maintains that its "State Lawsuit against the Defendant, who is a freight broker, is not preempted." Resp. to Mot. to Dismiss 2, ECF No. 18. On the merits, Celtic argues that "plaintiff's claims must . . . be dismissed because Celtic is a freight broker to which the Carmack [Amendment] does not apply." Mot. to Dismiss 4, ECF No. 14. The parties therefore agree before this court that Celtic is a freight broker and not a carrier, despite any arguably contrary allegations in the complaint.[2] *Id*. at 2, 4–6; Resp. to Mot. to Dismiss 2, 3–6.

---

[2] As Celtic repeatedly notes, the bills of lading list GNS as the shipper and do not name Celtic at all. *See* Compl. Ex. A at 1. The fact that a party's name does not appear on a bill of lading is important, but it is not dispositive of whether the party was a carrier under the Carmack amendment. *See Indep. Mach., Inc. v. Kuehne & Nagel, Inc.*, 867 F. Supp. 752, 759–60 (N.D. Ill. 1994).

The dispositive jurisdictional question therefore becomes whether the Carmack Amendment preempts Quality King's breach of contract claims against a freight broker. The text of the Carmack Amendment reads in part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1).

The Carmack Amendment's purpose is to relieve cargo owners "of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Kawasaki*, 561 U.S. at 98 (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Thus, the Supreme Court and the Seventh Circuit have held that under the Carmack Amendment "a common carrier is liable for all losses which occurred while the goods were being transported by it, unless the carrier can demonstrate it is free from fault." *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 369 (7th Cir. 2000) (quoting *Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.*, 102 F.3d 914, 916 (7th Cir. 1996)).

Furthermore, "the Carmack Amendment preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of or damage to goods." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 284 (7th Cir. 1997) (citing *Hughes*, 829 F.2d at 1407). But "claims involving a separate and independently actionable harm to the shipper distinct from such damage are not preempted." *Id*. (citing *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452 (7th Cir. 1996)). The Seventh Circuit has expressly held "that the Carmack

Amendment does not preempt all claims by a carrier against a shipper or other 'person entitled to recover' for non-payment." *REI Transp.* 519 F.3d at 697.

The parties use the terms "broker" and "motor carrier" as they are defined in the statute. The term "carrier" refers to one of three other defined terms: "[t]he term 'carrier' means a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). In turn, "[t]he term 'motor carrier' means a person providing motor vehicle transportation for compensation." § 13102(14). The definition of "broker" excludes motor carriers—one who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.'" § 13102(2).

Consistent with these definitions, several courts in this district have held that the Carmack Amendment does not preempt state law claims against a broker, such as a claim for the breach of a duty to place a shipment with a reliable and adequately insured carrier. *E.g.*, *Sompo Japan Ins. Co. v. B & H Freight Inc.*, 177 F. Supp.3d 1084, 1086–87 (N.D. Ill. 2016); *Custom Cartage, Inc., v. Motorola, Inc.*, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999) (collecting additional cases); *see also Brunner* 2020 WL 635905, at *6; *Traffic Tech, Inc. v. Arts Transp., Inc.*, 2016 WL 1270496, at *3 (N.D. Ill. 2016). Celtic cites no contrary authority, and the court has located none.

Rather, Celtic attempts to distinguish cases like *Sompo Japan* because the plaintiff's complaint in that case sounded in tort rather than contract. Reply 3–4, ECF No. 20. No authority is cited supporting this distinction. *See id.* Nor does this court find the distinction persuasive. Nothing in the preemption analysis of cases such as *Sompo Japan* turns on the source of the state law duty imposed on a broker. *See Sompo Japan*, 177 F. Supp.3d at 1086–87. Rather, the text and structure of the Carmack Amendment, including the definitions quoted

6

above, compel the conclusion that claims against brokers are not preempted.  *See id.*; *Brunner*, 2020 WL 635905, at \*6; *Custom Cartage*, 1999 WL 89563, at \*3.  This conclusion accords with the Seventh Circuit's description of Carmack Amendment preemption in *REI Transport*, the most recent case to take up the subject: "The Carmack Amendment only preempts state and common law remedies inconsistent with the federal act.  These inconsistent remedies consist of state statutory or common law [claims] *against a carrier for damages to the shipper's goods* that have been transferred in interstate commerce."  519 F.3d at 698 (emphasis added; internal quotations omitted).  This court therefore holds that the Carmack Amendment does not preempt claims against a party acting solely as a broker as that term is defined in 49 U.S.C. § 13102(2).

For the reasons stated, this case is remanded to the Circuit Court of Cook County, Illinois, under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.  Celtic's motion to dismiss the complaint, ECF No. 14, is denied without prejudice to renewal in state court.

Dated:  December 10, 2020 /s/
Joan B. Gottschall
United States District Judge